IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC, <br> as Broadcast Licensee of the May 7, 2016 <br> Saul Alvarez v. Amir Khan WBC World <br> Middleweight Championship Fight <br> Program., <br> <br> Plaintiff, <br> <br> v. <br> <br> 1) JJRM, LLC, individually, and d/b/a <br> THE JOINT and n/k/a ICON <br> RESTAURANT & BAR; and <br> 2) KINDAL L. BLACK a/k/a KINBAC <br> BLACK, individually, and d/b/a THE <br> JOINT and n/k/a ICON RESTAURANT <br> & BAR; and 3) LORI A. ALEXANDER, <br> individually, and d/b/a THE JOINT and <br> n/k/a ICON RESTAURANT & BAR, <br> <br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 3:19-CV-1090-K |

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff J&J Sports Productions, Inc.'s Motion for Summary Judgment and Brief in Support (the "Motion for Summary Judgment") (Doc. No. 24). Defendants JJRM, LLC, individually, and d/b/a The Joint and n/k/a Icon Restaurant & Bar ("JJRM, LLC"); and Kindal L. Black a/k/a Kinbac Black, individually, and d/b/a The Joint and n/k/a Icon Restaurant & Bar ("Kindal Black"); and Lori A. Alexander, individually, and d/b/a The Joint and n/k/a Icon Restaurant & Bar, (collectively, the

1

"Defendants") did not file responses to Plaintiff's Motion for Summary Judgment. After careful consideration of the Motion for Summary Judgment, summary judgment evidence, the record, and the applicable law, the Court **GRANTS** the Motion for Summary Judgment for the following reasons.

I.  Factual and Procedural History

Plaintiff J&J Sports Productions, Inc. ("Plaintiff") markets and licenses commercial exhibitions of pay-per-view prizefight events. Plaintiff is the license company that was exclusively authorized to sub-license the telecast of *Saul Alvarez v. Amir Khan WBC World Middleweight Championship Fight Program*, including all of the undercard or preliminary bouts (collectively the "Event"), at closed-circuit locations, such as theaters, arenas, bars, restaurants and the like across Texas. The Event could only be shown in a commercial establishment if that establishment was contractually authorized to do so by Plaintiff in exchange for a fee. To prevent unauthorized interception or viewing of the Event, the satellite transmission the Event was electronically coded or scrambled and was not available to the general public. After an establishment was contractually authorized to receive the Event, Plaintiff provided the electronic decoding capabilities and satellite coordinates necessary to receive the signal of the Event. Defendants did not contract with Plaintiff, or any of its agents, to obtain the rights to broadcast the Event.

On May 7, 2016, the day of the Event, without authorization, Defendants intercepted or received or assisted in the interstate communication of the Event, and

broadcast or assisted in the broadcast of the Event to patrons within their establishment. Plaintiff's Auditor entered the establishment on the night of the Event and observed the Event being telecast on 15 televisions. Defendants' establishment had a maximum capacity of 250 people. During the three times that Plaintiff's Auditor counted the number of patrons, the headcounts were 45, 55, and 80 people.

On May 6, 2019, Plaintiff filed this action against Defendants for violation of the Federal Communications Act of 1934 ("FCA"). 47 U.S.C. §§ 553, 605. Plaintiff seeks $10,000 in statutory and $50,000 in additional damages, plus attorney's fees, post-judgment interest, and costs. On July 1, 2019, Defendants filed its Answer to Plaintiff's Complaint, denying liability under the FCA.

On August 14, 2020, Plaintiff moved for summary judgment on the grounds that Defendants violated Section 605 of the FCA. In support of its motion, Plaintiff submitted: the Affidavit of Thomas P. Riley, the *Closed Circuit Television License Agreement*, the Affidavit Laitalain Walker ("Plaintiff's Auditor") (including photographs), a copy of the Rate Card for the Event, the Affidavit of David M. Diaz (Plaintiff's attorney), JJRM, LLC's Responses to Plaintiff's First Requests for Admission, Kindal Black's Responses to Plaintiff's First Requests for Admission, and a copy of videos taken by Plaintiff's Auditor.

Resolution of this Motion for Summary Judgment will dispose of all issues and parties in this case. As earlier noted, Defendants did not file a response to the Motion for Summary Judgment.

3

## II. Applicable Law

Summary judgment is appropriate when the pleadings, affidavits, and other summary-judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is a fact that under the applicable substantive law "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of "a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

The moving party bears the burden of identifying those portions of the record it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial; however, the nonmovant may not rest upon allegations in the pleadings to make such a showing. *Anderson*, 477 U.S. at 256–57. Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence cannot defeat a motion for summary judgment. *See id.* at 249–52; *Boudreaux*, 402 F.3d at 540. "Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or

4

where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 199 (5th Cir. 1999). If the nonmovant fails to make a sufficient showing to prove the existence of an essential element to the case and on which the nonmovant will bear the burden of proving at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322. The nonmovant must cite specific facts in the record to survive a motion for summary judgment, as "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)); *see* FED. R. CIV. P. 56(c)(3).

Defendants filed no response to the Motion for Summary Judgment. This failure does not permit the Court to enter a "default" summary judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). Normally, [a] summary judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)) (Fitzwater, J.). In this case, there is testimony presented by way of admissions contained within Defendants' Answer that the court must consider because it is part of the record.

### III. Analysis

Plaintiff has elected to proceed pursuant to 47 U.S.C. § 605 because the "transmission of the Event originated via satellite." Doc. No. 24 at 8; Aff. of Thomas P. Riley; *see also Kingvision Pay-Per-View v. Marinelarena*, No. EP-01-CA-0155-EP 2002, U.S. Dist. LEXIS 25894 (W.D. Tex. Mar. 28, 2002) (citing *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001)).

Section 605 is violated when one "intercept[s] any radio communication . . . receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Plaintiff may bring a private right of action under Section 605 to obtain statutory damages. *See* § 605(d) (6), (e)(3)(C)(ii). To establish liability under Section 605, a strict liability statute, Plaintiff need only prove (1) that the Event was exhibited in Defendants' establishment and (2) Plaintiff did not authorize the particular exhibition of the Event. *See Garden City Boxing Club, Inc. v. Vinson*, No. 3.03-CV-0700-BD(P), 2003 WL 22077958, at *3 (N.D. Tex. Sept. 3, 2003); *Joe Hand Promotions, Inc., v. Lee*, No. H-11-2904, 2012 WL 1909348, at *3 (S.D. Tex. May 24, 2012). Plaintiff relies on the following uncontroverted summary judgment evidence: Affidavit of Thomas P. Riley, Affidavit of Laitalain Walker ("Plaintiff's Auditor"), Closed Circuit Television License Agreement between Plaintiff and the promoter of the Event, admissions made by Defendant JJRM, LLC and

6

Defendant Kindal Black, and videos taken by Plaintiff's Auditor of the Event being broadcast in Defendants' establishment.

The Affidavit of Thomas P. Riley, one of Plaintiff's attorneys, establishes that the Event was legally available to commercial establishments in Texas only through an agreement with Plaintiff. The affidavit establishes that on May 7, 2016 without authorization Defendants intercepted and received or assisted in the interception and receipt of the transmission of the Event and broadcast or assisted in the broadcast of the Event to the patrons of Defendants' establishment. The Affidavit of Laitalain Walker states that on the night of the Event, Plaintiff's Auditor observed the Event being exhibited on 15 televisions at Defendants' establishment and included photos of the Event on screens inside the establishment. Defendants admit that the Event was shown in Defendants' establishment on May 7, 2016 without authorization to do so. *See* JJRM, LLC's Resp. to Pl.'s First Req. for Admis. 2–8; Kindal Black's Resp. to Pl.'s First Req. for Admis. 2–7. The license agreement grants Plaintiff the exclusive right to license the Event to commercial establishments in the United States, including Texas.

Defendants are further liable for violations of the FCA because Defendants had a right and ability to supervise the activities of the establishment and had an obvious and direct financial interest in exploitation of the copyright material. Doc. No 6 at 1–2; JJRM, LLC's Resp. to Pl.'s First Req. for Admis. 7; Kindal Black's Resp. to Pl.'s First Req. for Admis. 6–7. The Court observes that the FCA "expressly prohibit[s] assisting third parties in intercepting or receiving unauthorized communications, and have been

7

interpreted to allow [an aggrieved person] to hold [a person] individually [vicariously] liable if he had (1) the right and ability to supervise the unauthorized activities of the establishment in those activities and (2) an obvious and direct financial interest in those activities." *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 753 (S.D. Tex. 2014) (collecting cases). Because Defendants admit to both necessary elements for liability, they are liable.

Further, Defendants admit that they held a TABC liquor permit for the establishment on the night of the Event. *See* Doc No. 6 at 1–2; JJRM, LLC's Resp. to Pl.'s First Req. for Admis. 7, 9; *see also* Kindal Black's Resp. to Pl.'s First Req. for Admis. 8. Therefore, Defendants are liable for the illegal exhibition on the Event in the establishment. *152 Bronx*, 11 F. Supp. 3d at 754; *J & J Sports Productions, Inc. v. Garcia*, No. H-08-1675, 2009 WL 2567891, at *3 (S.D. Tex. Aug. 14, 2009) ("Defendant is responsible for broadcast at the Event at her establishment because she holds the liquor license.") (citing *Joe Hand Promotions, Inc. v. Roberson Management*, No. H-05-3793, 2006 WL 2346308, at *1 (S.D. Tex. Aug. 11, 2006) and *Garden City Boxing Club*, 2003 WL 22077958, at *2 (holding that the person that holds the liquor license for the establishment must "maintain exclusive occupancy and control of the [establishment] under Texas law.")).

For the reasons herein stated, no disputed issues of material fact exist with regard to Plaintiff's claims, and Plaintiff is entitled to judgment as a matter of law. Accordingly, the Court **grants** Plaintiff's Motion for Summary Judgment.

## IV. Damages, Attorney's Fees, and Costs

Plaintiff seeks statutory damages rather than actual damages against Defendants under Section 605. *See* 47 U.S.C. § 605(e)(3)(C)(i) (stating that a party violated under 47 U.S.C. § 605 may elect to receive either statutory damages or actual damages); *see also Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at *3 (N.D. Tex. Apr. 22, 2014) ("Although Defendants likely violated both §§ 553 and 605, Joe Hand cannot recover under both provisions. The Court will therefore focus only on the award of damages under § 605 because it allows for greater recovery by Joe Hand.") (citations omitted) (Boyle, J.) (hereafter "*Alima*"). Statutory damages under Section 605 must be awarded in an amount "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff asks for an award of $10,000, which is the statutory maximum. An establishment such as the establishment owned, operated, maintained, and/or controlled by Defendants, which has an approximate maximum occupancy of 250 people, would have been subject to a licensing fee for the Event of $3,200 from Plaintiff. Aff. of Thomas P. Riley 3. In support of its damages claim, Plaintiff asserts that it deprived of the value, benefits, and profits derived from the unauthorized broadcast at the Defendants' establishment and the value of business investment, business opportunities and goodwill. *See* Doc. No. 24 at 11 (citation and quotation marks omitted). In further support, Plaintiff also submitted the Affidavits of Thomas P. Riley and Laitalain Walker and the "Rate Card" for the Event. In his affidavit,

9

Thomas P. Riley states that the licensing fee of an establishment the size of the Defendants' would have been $3,200. Aff. of Thomas P. Riley 3. The Rate Card confirms such licensing fee. Doc. No. 24, Ex. A-3. Plaintiff's Auditor also states in her affidavit that the establishment's maximum occupancy is 250 people and that Defendants' patrons paid a $10.00 cover charge to enter the establishment and watch the broadcast of the Event. Aff. of Laitalain Walker 1–2. Considering that Plaintiff would have charged Defendants $3,200 to license the broadcast, the damage incurred by Plaintiff, and the need to deter future violations, the Court finds that awarding statutory damages in the amount of $3,200 is appropriate.

A party is entitled to additional damages under 47 U.S.C. § 605(e)(3)(C)(ii) if the defendant is determined to have "willfully" violated Section 605. If the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court, in its discretion, may increase the damage awarded by an amount of not more than $100,000. 47 U.S.C. § 605(e)(3)(C)(ii).

Plaintiff seeks $50,000 in additional damages because of Defendants' willful violation of Section 605. Plaintiff asserts that the transmission of the Event was "electronically coded or scrambled and was not available to or intended for the use of the general public" and Defendants "willfully acted to illegally intercept the transmissions of the Event" because "of the absence of any way in which Defendants could have 'innocently' accessed the broadcast of the Event." Defendants did charge a cover fee to enter the establishment and watch the broadcast of the Event, although

10

there is no evidence of a history of similar violations or that Defendants advertised the broadcast the Event. Even though there is no direct evidence of willfulness by Defendants, courts have found similar reasoning to that offered by Plaintiff to sufficiently establish a "willful" violation of Section 605. *See Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, No. 3:16-CV-01889-M, 2017 WL 373478, at *4 (N.D. Tex. Jan. 26, 2017) (Lynn, C.J.) ("The Court concludes that [defendants] acted willfully. Given the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance . . . .") (quotation marks omitted); *Alima*, 2014 WL 1632158, at *5 (finding the argument that the "[d]efendants could not have innocently accessed the broadcast of the Event" persuasive when determining whether the defendants "willfully" violated Section 605) (quotation marks omitted); *Entm't by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 777 (S.D. Tex. 2002) (finding Section 605 was "willfully" violated because of the "limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance . . . .").

Based on the *de minimis*, at best, probability of Defendants inadvertently intercepting the Event, the Court concludes that Defendants willfully violated Section 605 and additional damages in the amount of three times the base statutory damages, or $9,600, is reasonable. *See Alima*, 2014 WL 1632158, at *5 ("Though there is little guidance how the Court should weigh certain factors when calculating additional

11

damages, many courts have applied [] multipliers of three to five when faced with a defendant who broadcast an event willfully for his own commercial benefit."). Plaintiff is entitled to statutory damages of $3,200 and additional damages of $9,600.

Plaintiff is also entitled to recover its reasonable attorney's fees and court costs incurred from this case under Section 605. *See* 47 U.S.C. § 605(e)(3)(B)(iii) ("The court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."). Plaintiff requests attorney's fees from Defendants in the amount of a one-third contingent fee, or, alternatively, in the amount of $300 per hour for the time counsel spent on the case through the Motion for Summary Judgment as presented in the Affidavit of David M. Diaz, the Plaintiff's attorney of record. Aff. of David M. Diaz 5. The Court declines to award the one-third contingent fee requested by counsel. After review of the supporting documentation, the Court finds that an hourly rate of $300 per hour is a reasonable hourly rate is within the range of the usual and customary rate charged by attorneys in the Dallas legal community with similar ability, competence, experience, and skill as Plaintiff's attorney. The Affidavit of David M. Diaz states that a minimum of eight hours has been spent by counsel on this case through the preparation of Plaintiff's Motion for Summary Judgment. The Court finds that Plaintiff's counsel reasonably expended a minimum of eight hours to prosecute this case successfully. *See J & J Sports Prods., Inc. v. Rest. & Taqueria Cristina*, No. 3:11-CV-3104-N BF, 2013 WL 3878589, at *7 (N.D. Tex. July 29, 2013) (Godbey, J.) (finding and awarding reasonable attorney's fees based

on an estimated minimum number of hours spent on the litigation); *J & J Sports Prods., Inc. v. Q Cafe, Inc.*, No. 3:10-CV-02006-L, 2012 WL 215282, at *6 (N.D. Tex. Jan. 25, 2012) (Lindsay, J.) (same). An award of attorney's fees in the amount of $2,400 is sufficient and reasonable. Because "the recovery of full costs, including awarding reasonable attorneys' fees" must be paid by Defendants to Plaintiff, the Court determines that Plaintiff is entitled to an award of attorney's fees in the amount of **$2,400**. *See* 47 U.S.C. § 605(e)(3)(B)(iii). The Court does not award attorney's fees for any post-trial and/or appellate work at this time. Plaintiff may seek those should those attorney's fees arise. Plaintiff is also entitled to post-judgment interest at the rate of **0.10%**. 28 U.S.C. § 1961.

## V.  Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff J&J Sports Productions, Inc.'s Motion for Summary Judgment. A separate final judgment will be entered.

Plaintiff is entitled to recover from Defendants, jointly and severally: $3,200.00 in statutory damages; $9,600.00 in additional damages for willful violation of Section 605; $2,400.00 in reasonable attorney's fees; costs; and 0.10% post-judgment interest.

**SO ORDERED.**

Signed December 16th, 2024.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE

13